UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| S.H, *et al.*, | ) |
| | ) |
| | ) Civil Action No.: 1:14-cv-01317 (KBJ) |
| Plaintiff, | ) |
| | ) |
| v. | ) |
| | ) |
| DISTRICT OF COLUMBIA, *et al.* | ) |
| | ) |
| | ) |
| Defendants. | ) |
| | ) |

## DEFENDANTS' MOTION TO DISMISS

Pursuant to Fed. R. Civ. P. 12(b)(6), Defendants, the District of Columbia, Officer Taylor Volpe, and John Doe Police Officers 1-20, by and through undersigned counsel, hereby move the Court for an Order dismissing the Complaint for failure to state a claim upon which relief can be granted. Defendants seek dismissal because (1) on the face of the Complaint, the defendant officers are entitled to qualified immunity (2) Plaintiffs failed to allege a *Monell* violation against the District; and (3) the officers were not negligent *per se*.

The grounds for this motion are more fully set forth in the accompanying memorandum of points and authorities. A proposed order is also attached.

## LCvR 7(m) Certificate

Because this motion is dispositive, LCvR 7(m) does not require Defendants to seek Plaintiffs' consent.

Respectfully Submitted,

IRVIN B. NATHAN
Attorney General for the
District of Columbia

GEORGE C. VALENTINE
Deputy Attorney General
Civil Litigation Division

/s/ *Jonathan H. Pittman*
JONATHAN H. PITTMAN [430388]
Chief, Civil Litigation Division Section III

/s/ *Joseph A. González*
JOSEPH A. GONZÁLEZ
Assistant Attorney General
D.C. Bar No. 995057

*/s/ Aaron J. Finkhousen*
AARON J FINKHOUSEN [1010044]
441 4th Street, N.W., Sixth Floor South
Washington, D.C. 20001-2714
202-724-6511 (direct)
aaron.finkhousen@dc.gov

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| S.H, *et al.*,                )<br>                                       )<br>            Plaintiff,        )<br>                                       )<br>v.                                  )<br>                                       )<br>DISTRICT OF COLUMBIA, *et al.*  )<br>                                       )<br>            Defendants.   )  | Civil Action No.: 1:14-cv-01317 (KBJ) |

**Table of Contents**

Defendants' Motion to Dismiss ............................................................................................... 1

Introduction .................................................................................................................................. 2

Nature of the Case ....................................................................................................................... 2

Standard of Review ..................................................................................................................... 3

Argument ...................................................................................................................................... 3

**I.    The individual officers are entitled to qualified immunity.** ............................................. 3

   a.    The warrant was supported by probable cause. ................................................. 5

   b.    The means of executing the search warrant were reasonable. ...................... 8

      1.    Plaintiffs' representations to the officers are irrelevant. ............................ 8

      2.    Pointing guns at the Plaintiffs was reasonable. ........................................... 9

      3.    Using handcuffs to detain the Plaintiffs was reasonable. .......................... 9

   c.    The warrant was not so lacking in indicia of probable cause as to render the officers' belief in its validity unreasonable. ................................................................ 10

**II.   Because there is no underlying constitutional violation, Plaintiffs have not pleaded a *Monell* claim.** ................................................................................................................................ 11

**III.  Plaintiffs have not pleaded a case of negligence *per se*.** ............................................... 12

Conclusion ................................................................................................................................. 13

**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| S.H, *et al.*,                              ) | |
|                 Plaintiff,      ) | Civil Action No.: 1:14-cv-01317 (KBJ) |
| v.                                          ) | |
| DISTRICT OF COLUMBIA, *et al.*   ) | |
|                 Defendants.   ) | |

**Cases**

*Anderson v. Creighton,* 483 U.S. 635 (1987) ................................................................. 5

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009). .............................................................. 4, 6, 10

*Baker v. Dist. Of Columbia*, 326 F.3d 1302 (D.C. Cir. 2003) ...................................... 17

*Bell Atl. Corp. v. Twombly*, 550 U.S. 554 (2007). ......................................................... 4

*Bond v. United States*, 529 U.S. 334 (2000) ................................................................. 16

*Brown v. Dist. of Columbia*, 514 F.3d 1279 (D.C. Cir. 2008) ...................................... 18

*Brown v. United States*, 411 U.S. 223 (1973) ................................................................. 9

*Butera v. District of Columbia,* 235 F.3d 637 (D.C. Cir. 2001) ..................................... 5

*Collins v. City of Harker Heights, Tex.*, 503 U.S. 115 (1992) ...................................... 17

*Florida v. Harris*, 133 S.Ct. 1050 (2013) ......................................................... 7, 10, 11

*Illinois v. Gates*, 462 U.S. 213 (1983). ...................................................................... 7, 10

*Konah v. Dist. of Columbia*, 971 F. Supp. 2d 74 (D.D.C. 2013). ................................. 18

*Los Angeles Cnty., California v. Rettele*, 550 U.S. 609 (2007). .............................. 3, 14

*Malley v. Briggs*, 475 U.S. 335 (1986) ............................................................... 6, 15, 16

*Maryland v. Pringle*, 540 U.S. 366 (2003) ............................................................................... 11

*Michigan v. Summers*, 452 U.S. 692 (1981). ...................................................................... 13, 14

*Monell v. Dep't of Soc. Servs. of City of N.Y.,* 436 U.S. 658 (1978) ........................................... 17

*Muehler v. Mena*, 544 U.S. 93 (2005). ................................................................................ 14, 15

*Ogden v. Dist. of Columbia*, 676 F. Supp. 324 (D.D.C. 1987) *aff'd in an unpublished opinion*, 861 F.2d 303 (D.C. Cir. 1988). ..................................................................................... 7, 10, 15

*Pearson v. Callahan*, 555 U.S. 223 (2009). .................................................................................. 5

*Rakas v. Illinois*, 439 U.S. 128 (1978) .......................................................................................... 9

*Ramirez v. City of Buena Park*, 560 F.3d 1012 (9th Cir. 2009) ................................................. 13

*Saucier v. Katz,* 533 U.S. 194 (2001) ....................................................................................... 5, 6

*Sennett v. United States*, 667 F.3d 531 (4th Cir. 2012) ............................................................. 13

*Terry v. Ohio*, 392 U.S. 1 (1968). ............................................................................................... 12

*United States v. Calandra*, 414 U.S. 338 (1974) ......................................................................... 9

*United States v. Gooding*, 477 F.3d 428 (D.C. Cir. 1973) *aff'd Gooding v. United States*, 416 U.S. 430 (1974). ..................................................................................................................... 19

*United States v. Hodge*, 246 F.3d 301 (3rd Cir. 2001) .............................................................. 11

*United States v. Leon*, 468 U.S. 897 (1984) ................................................................................. 9

*United States v. Payner*, 447 U.S. 727 (1980). ............................................................................ 9

*United States v. Spencer*, 530 F.3d 1003 (D.C. Cir. 2008). ........................................................ 6

*United States v. Thomas*, 989 F.2d 1252 (D.C. Cir. 1993) ....................................................... 11

*Wong Sun v. United States*, 371 U.S. 471 (1963) ........................................................................ 9

**Statutes**

21 U.S.C. § 879 ............................................................................................................................ 15

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| S.H, *et al.*,           ) | |
|                          ) | |
|                          ) | Civil Action No.: 1:14-cv-01317 (KBJ) |
|      Plaintiff,          ) | |
|                          ) | |
| v.                       ) | |
|                          ) | |
| DISTRICT OF COLUMBIA, *et al.*  ) | |
|                          ) | |
|                          ) | |
|      Defendants.         ) | |

## **DEFENDANTS' MOTION TO DISMISS**

Pursuant to Fed. R. Civ. P. 12(b)(6), Defendants, the District of Columbia, Officer Taylor Volpe, and John Doe Police Officers 1-20, by and through undersigned counsel, hereby move the Court for an Order dismissing the Complaint for failure to state a claim upon which relief can be granted. Defendants seek dismissal because (1) on the face of the Complaint, the defendant officers are entitled to qualified immunity; (2) Plaintiffs failed to allege a *Monell* violation against the District; and (3) the Complaint fails to allege facts that would establish that the officers were negligent *per se*.

Plaintiffs assert eight claims for relief. Compl. ¶¶ 93-109. These eight claims can be conceptually organized as follows: (1) an alleged violation of the Fourth Amendment by the individual officers in acquiring and serving the search warrant (Counts 1, 2, 3, 4, and 6); (2) an alleged *Monell* violation against the District of Columbia (Counts 5 and 8); and (3) negligence *per se* against the officers for executing the search warrant at night (Count 7). The individual officers are shielded by qualified immunity because Plaintiffs allege no constitutional violation and because the officers' actions did not violate any clearly established rights. Plaintiffs have

failed to allege a *Monell* claim against the District because there is no underlying constitutional violation.  Finally, Plaintiffs cannot make out a claim for negligence *per se* because Defendants violated no law in executing the search warrant at night.

## Introduction

Plaintiffs filed this lawsuit because police officers allegedly humiliated and embarrassed them when the officers executed a search warrant for their address.  Plaintiffs had committed no crimes, and no evidence was found in their home.  Thus, they conclude no warrant should have issued.  However,

> The Fourth Amendment allows warrants to issue on probable cause, a standard well short of absolute certainty. Valid warrants will issue to search the innocent, and people like [Plaintiffs] unfortunately bear the cost. Officers executing search warrants on occasion enter a house when residents are engaged in private activity; and the resulting frustration, embarrassment, and humiliation may be real, as was true here. When officers execute a valid warrant and act in a reasonable manner to protect themselves from harm, however, the Fourth Amendment is not violated.

*Los Angeles Cnty., California v. Rettele*, 550 U.S. 609, 615-16 (2007).

## Nature of the Case

According to Plaintiffs, Officer Taylor Volpe of the Metropolitan Police Department ("MPD") arrested Mordsen Causwell Box on April 5, 2013.  Compl. at Ex. 1.  Officers found 145.4 grams of marijuana in Mr. Box's vehicle and that he had attempted to hide in a police cruiser. Compl. at Ex. 1.  Based on this discovery and his training and experience, Officer Volpe applied for a warrant to search Mr. Box's home of record: 1054 Quebec Place NW.  Compl. at Ex. 1.

On the night of April 18, 2013, officers, after knocking and waiting for Plaintiffs to open the door, entered Plaintiffs' home: 1054 Quebec Place NW.  Compl. ¶¶ 1, 64.  The officers quickly secured command of the situation, locating each of Plaintiffs in their home.  Compl. ¶¶

66, 67, 70.  The officers found Plaintiff Sterling Harrison in his room playing video games and placed him in handcuffs.  Compl. ¶ 67.  The officers found Plaintiff S.H. naked, taking a shower.  Compl. ¶ 70.  The officers had their weapons drawn at least during these initial steps.  Compl. ¶ 65.

Plaintiffs allege that the officers violated the Fourth Amendment, resulting in humiliation.  Compl. ¶¶ 8, 78.

## Standard of Review

To survive a motion to dismiss, a plaintiff's "[f]actual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact)."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 554, 555 (2007).  In *Ashcroft v. Iqbal*, the Supreme Court set forth a "two-pronged approach" that a court may utilize when ruling on a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6).  *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009).  While a court generally must consider a plaintiff's factual allegations as true, the court may first "identify[] pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth.  While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations."  *Id.*  Thus, the basic pleading standards "demand [] more than an unadorned, the-defendant-unlawfully-harmed-me accusation."  *Id.* at 678 (citing *Twombly*, 550 U.S. at 555).

Once the court has determined that the plaintiff has asserted "well-pleaded factual allegations," the court "should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief."  *Iqbal*, 556 U.S. at 679.  Applying these standards to the instant case, the Court should dismiss the Complaint.

## Argument

I.   **The individual officers are entitled to qualified immunity.**

In *Saucier v. Katz,* 533 U.S. 194, 200 (2001), the Supreme Court set forth a two-step process for determining whether qualified immunity should apply in a particular case. The first inquiry under *Saucier* is whether the facts, taken in the light most favorable to the party claiming to have been injured, show that the government official's conduct violated a constitutional right. *Katz*, 533 U.S. at 201. If no constitutional right was violated, qualified immunity is appropriate. *Id.* If the plaintiff's rights were violated, the second inquiry is whether, "in light of the specific context of the case," the right in question was "clearly established." *Id.* A right is "clearly established" if "the contours of that right [are] sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Butera v. District of Columbia,* 235 F.3d 637, 646 (D.C. Cir. 2001) (quoting *Anderson v. Creighton,* 483 U.S. 635, 640 (1987)).[1] Claims of qualified immunity should be resolved "at the earliest possible stage in litigation." *Katz*, 533 U.S. at 200-01 (quotation marks and citation omitted).

When police officers obtain a warrant before executing a search, they are ordinarily entitled to rely on the issuing judge's determination that probable cause exists. *See United States v. Spencer*, 530 F.3d 1003, 1006-07 (D.C. Cir. 2008). "Only where the warrant application is so lacking in indicia of probable cause as to render official belief in its existence unreasonable ... will the shield of [qualified] immunity be lost." *Malley v. Briggs*, 475 U.S. 335, 344-45 (1986) (internal citation omitted).

The officers are entitled to qualified immunity because their actions were reasonable and because any rights Plaintiffs seek to vindicate were not clearly established.

---

[1] The sequence of the two steps is now discretionary, as the Supreme Court has made clear that courts may "exercise their sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances of the particular case at hand." *Pearson v. Callahan*, 555 U.S. 223, 236 (2009).

4

### a. The warrant was supported by probable cause.[2]

In determining whether an affidavit supports probable cause to support a search warrant, a judge must take a common-sense approach and determine whether there is a fair probability that contraband or evidence of a crime will be found in a particular place. *Illinois v. Gates*, 462 U.S. 213, 238 (1983). Courts have routinely rejected hypertechnical, post hoc reviews of probable cause. *See, e.g., id.* at 236. The Constitution requires only "the kind of fair probability on which reasonable and prudent [people,] not legal technicians, act." *Florida v. Harris*, 133 S.Ct. 1050, 1055 (2013) (internal quotations omitted) (alteration in original). To determine whether an affidavit could support probable cause where a plaintiff alleges omission of material information, "logic dictates that the affidavit be read as if the allegedly relevant material were included to determine whether probable cause would have been undetermined." *Ogden v. Dist. of Columbia*, 676 F. Supp. 324, 327 (D.D.C. 1987) *aff'd in an unpublished opinion*, 861 F.2d 303 (D.C. Cir. 1988).

Here, the affidavit supporting the warrant provides that:

1) The officer had been a sworn MPD officer for a year and had been involved in numerous arrests for narcotics and other violations of the law;
2) The officer, based on his training and experience believed that:
    a) Persons who distribute drugs maintain various records in their residences, the residences of friends or family, and stash houses or safe houses;
    b) Persons who distribute drugs maintain large quantities of cash in their residences, the residences of friends or family, and stash houses or safe houses;
    c) Persons who distribute drugs maintain contraband related to distributing drugs in their residences, the residences of friends or family, and stash houses or safe houses;
    d) Persons who distribute drugs maintain records disclosing identities of others who distribute drugs in their residences, the residences of friends or family, and stash houses or safe houses;
    e) Persons who distribute drugs often take photos of themselves or others with contraband, and the photos can be found in their residences, the residences of friends or family, and stash houses or safe houses;

---

[2]    Because whether a warrant is supported by probable cause is a question of law, Plaintiffs' allegations that the warrant was not supported by probable cause need not be presumed true in a motion to dismiss. *See Iqbal*, 556 U.S. at 679.

  f) Persons who distribute drugs maintain documents containing circumstantial evidence of the distribution of drugs in their residences, the residences of friends or family, and stash houses or safe houses; and
  g) Persons who distribute drugs often possess weapons to facilitate their business and keep weapons in their residences, the residences of friends or family, and stash houses or safe houses;
3) The officer described the arrest that led him to conclude probable cause existed to search 1054 Quebec Place:
  a) The officer arrested Mr. Mordsen Causwell Box for possession with intent to distribute marijuana after searching his vehicle at a traffic stop on April 5, 2013;
  b) The officer asked if he could look in the car twice, and the second time, the driver responded in the affirmative;
  c) The officer found 42.2 grams of marijuana in plain view in the vehicle;
  d) The officer also found $180 in cash on Mr. Box's person;
  e) Another officer later found 103.2 grams of marijuana hidden in the backseat of the police cruiser where only Mr. Box had been;
4) Mr. Box later told police officers that he resided at Plaintiffs' home; and
5) That persons who distribute drugs "make it a habit to store [drugs] at their . . . residence."

Compl. at Ex. 1.  Plaintiffs allege that the affidavit cannot support probable cause because the search of Mr. Box's vehicle lacked consent, the affidavit omits certain relevant facts, and Mr. Box never stated he lived at their home.

  Plaintiffs allege that the initial search of Mr. Box's vehicle lacked consent and was, therefore, unconstitutional.[3]  Compl. ¶¶ 44-45.  This statement is irrelevant to Plaintiffs' claim. Use of unlawfully obtained evidence "works no new Fourth Amendment wrong." *United States v. Leon*, 468 U.S. 897, 905-906 (1984) (quoting *United States v. Calandra*, 414 U.S. 338, 354 (1974)).  In fact, evidence obtained in derogation of the Fourth Amendment is regularly admitted against co-conspirators or co-defendants who have no personal right of privacy in the places searched or the evidence seized.  *Rakas v. Illinois*, 439 U.S. 128 (1978); *Brown v. United States*, 411 U.S. 223 (1973); *Wong Sun v. United States*, 371 U.S. 471, 491–492 (1963); *cf. United*

---

[3] Plaintiff's allegation is incorrect.  Consent to search does not require magic words or a perfect record; rather, it looks to "what [] the typical reasonable person [would] have understood by the exchange between the officer and the suspect." *Florida v. Jimeno*, 500 U.S. 248, 251 (1991).  A reasonable person would understand that Mr. Box consented to a search when he responded to the officer's question "OK, so I can look?" by stating "yeah." *See* Compl. Ex. 1; Compl. ¶ 18 (not contesting these facts).

*States v. Payner*, 447 U.S. 727 (1980). Thus, the source of the evidence has no bearing on its usefulness in determining probable cause, Plaintiffs' allegation to the contrary notwithstanding. *Iqbal*, 556 U.S. at 679 (holding a Court need not presume the truth of legal conclusions found in a complaint).

Plaintiffs next allege that the affidavit omits material information about the success rates of MPD warrants of this type and about the differences between "indigent low-level street dealers" and "big-time drug traffickers." Compl. ¶¶ 42, 56, 58. But the omissions Plaintiffs allege are either irrelevant or bolster the finding of probable cause. In evaluating Plaintiffs' allegation of material omission, "logic dictates that the affidavit be read as if the allegedly relevant material were included to determine whether probable cause would have been undetermined." *Ogden*, 676 F. Supp. at 327. First, Plaintiffs allege that search warrants like this one find drugs only one third of the time. While Plaintiffs treat this success rate with contempt, finding drugs in one third of similar police searches is strong evidence of probable cause.[4] Even if it were not, the Supreme Court has held success and failure rates have limited usefulness. *See Harris*, 133 S.Ct. at 1056-57 ("Making matters worse, the decision below treats records of a dog's field performance as the gold standard in evidence, when in most cases they have relatively limited import."). Second, the alleged difference between "indigent low-level street dealers" and "big time drug traffickers" is irrelevant. The officers had no way of determining which category Mr. Box fell under. Thus, any differences between classes of drug dealers could not logically affect their decision or the magistrate's decision. Moreover, "observations of illegal activity

---

[4] "The test for probable cause is not reducible to precise definition or quantification. Finely tuned standards such as proof beyond a reasonable doubt or by a preponderance of the evidence ... have no place in the [probable-cause] decision." *Harris*, 133 S.Ct. at 1055 (internal quotation marks omitted) (alteration in original) (citations omitted). "[O]nly a probability" of criminal conduct is required. *Gates*, 462 U.S. at 235. Plaintiffs' post hoc review of statistical data attempts to quantify probable cause, a practice which the Supreme Court has expressly condemned. *Harris*, 133 S.Ct. at 1055 ("The test for probable cause is not reducible to 'precise definition or quantification.'") (quoting *Maryland v. Pringle*, 540 U.S. 366, 371 (2003)).

occurring away from the suspect's residence can support a finding of probable cause, if there is a reasonable basis to infer from the nature of the illegal activity observed, that relevant evidence will be found in the residence." *United States v. Thomas*, 989 F.2d 1252, 1255 (D.C. Cir. 1993); *see also United States v. Hodge*, 246 F.3d 301, 306-07 (3rd Cir. 2001) (holding probable cause existed where arrest occurred outside of home, officers reasonably believed defendant resided in home, and defendant was arrested for possession with intent to distribute drugs).  Whether Mr. Box was a criminal mastermind or a mere street dealer, based on the offense for which he was arrested – possession with intent to distribute – a reasonably prudent person could conclude that further evidence of Mr. Box's criminal conduct could be found in his home.

Finally, Plaintiffs allege that Mr. Box never stated that he lived at their home and, therefore, the warrant lacks probable cause to search their home.  Compl. ¶ 27.  This statement does not detract from finding probable cause.  Plaintiffs allege that arrestees often give addresses of homes where no drugs can be found.  Compl. ¶¶ 59-60.  Assuming, as the Court must at this stage, that Mr. Box never stated he lived at Plaintiffs' home and that Mr. Box had an expired driver's license listing his place of residence as Plaintiffs' home, and given the training that criminals tend to hide information about places where drugs are stored, finding probable cause is just as likely whether Mr. Box did or did not identify Plaintiffs' home as his own.

### b. The means of executing the search warrant were reasonable.

"The manner in which the seizure and search were conducted is, of course, as vital a part of the inquiry as whether they were warranted at all."  *Terry v. Ohio*, 392 U.S. 1, 28 (1968).  The execution of the warrant here was reasonable.  Plaintiffs allege three unreasonable actions by the officers in executing the warrant: (1) the Plaintiffs told the officers Mr. Box no longer lived there; (2) pointing guns at Plaintiffs; and (3) using handcuffs to detain Mr. Harrison.

### 1. Plaintiffs' representations to the officers are irrelevant.

8

Plaintiffs' representations to the officers are irrelevant.  Officers can reasonably search a home for which they have a warrant even if the occupants claim there is no contraband in the home.  *Cf. Sennett v. United States*, 667 F.3d 531, 536 (4th Cir. 2012) *(quoting Ramirez v. City of Buena Park*, 560 F.3d 1012, 1024 (9th Cir. 2009)) ("law enforcement officers do not have to rule out innocent behavior").  Here, Plaintiffs claim that probable cause dissipated because they told the officers there was no contraband in the home and Mr. Box no longer lived there.  Compl. ¶ 96.  But Plaintiffs' "plausible explanations . . . do not factor into the probable cause analysis." *See Sennett*, 667 F.3d at 536.  To conclude otherwise eviscerates the purpose of a search warrant. Therefore, Plaintiffs' representations to the officers are irrelevant.

### 2. Pointing guns at the Plaintiffs was reasonable.

"A warrant to search for contraband founded on probable cause implicitly carries with it the limited authority to detain the occupants of the premises while a proper search is conducted." *Michigan v. Summers*, 452 U.S. 692, 705 (1981).

In the interests of officer safety, officers are permitted to expose even innocent detainees when enacting a lawful search warrant to embarrassment and humiliation.  *Rettele*, 550 U.S. at 615-616 ("Deputies were not required to turn their backs to allow Rettele and Sadler to retrieve clothing or to cover themselves with the sheets. Rather, '[t]he risk of harm to both the police and the occupants is minimized if the officers routinely exercise unquestioned command of the situation.' ") (quoting *Summers*, 452 U.S. at 702-703).  Here, Plaintiffs allege no more than that the officers used the implicit threat of force in having their guns drawn to secure unquestioned command of the situation.  The Supreme Court has explicitly approved this practice.  Thus, the search was reasonable.

### 3. Using handcuffs to detain the Plaintiffs was reasonable.

Using handcuffs to detain an individual while executing a search warrant is undoubtedly an additional intrusion, but may be justified in light of the risks of flight if incriminating evidence is found, harm to the officers, and facilitating the orderly completion of the search. *Muehler v. Mena*, 544 U.S. 93, 98-99 (2005). "In executing a search warrant officers may take reasonable action to secure the premises and to ensure their own safety and the efficacy of the search." *Rettele*, 550 U.S. at 614. Plaintiffs allege that Sterling Harrison was handcuffed "for nearly half an hour" during the search.[5] Compl. ¶ 68. *Mena*, made clear that "Mena's detention for the duration of the search was reasonable under *Summers* because a warrant existed to search 1363 Patricia Avenue and she was an occupant of that address at the time of the search." *Mena*, 544 U.S. at 98. Similarly, here, a warrant existed to search 1054 Quebec Place and Plaintiffs were occupants of that address at the time of the search. Thus, detaining Plaintiffs during the search was reasonable.

Therefore, because the warrant was supported by probable cause and the search was reasonable, the officers committed no constitutional violation.

### c. The warrant was not so lacking in indicia of probable cause as to render the officers' belief in its validity unreasonable.

"For an officer to lose the shield of immunity, a plaintiff must demonstrate that if the omitted material had been included, 'a reasonably well-trained officer . . . would have known that his affidavit failed to establish probable cause and that he should not have applied for a warrant.' " *Ogden*, 676 F. Supp. at 328 (quoting *Malley* 475 U.S. at 344-45) (alteration in original). On the face of the Complaint, Plaintiffs have failed to make this showing.

---

[5] Paragraph 104 of the Complaint alleges the detention in handcuffs lasted "more than 30 minutes." Compl. ¶ 104. The length of time alleged here is not consequential, however. *Mena*, 544 U.S. at 100 (finding plaintiff's two to three hour detention in handcuffs reasonable).

Plaintiffs allege that the affidavit failed to include (1) information that discovery of the drugs was a product of an illegal search and (2) information related to MPD department-wide statistics regarding the success rate of search warrants supported by training and experience.[6] Compl. ¶¶ 4, 45.  As discussed above, information that the officers found the drugs in alleged derogation of Mr. Box's right to be free from unreasonable searches and seizures is irrelevant to finding probable cause because Fourth Amendment rights are individual rights, and the drugs were not found in derogation of Plaintiffs' rights.  Likewise, information related to the success rate of past MPD searches is not relevant because it does not reflect on Officer Volpe's (the affiant's) training and experience and because it does not negate the possibility of success, and cannot, therefore, eliminate an officer's reasonable belief.  Thus, this additional information does not strip the warrant application of all "indicia of probable cause" nor does it "render official belief in" a finding of probable cause "unreasonable."[7]  *See Malley*, 475 U.S. at 344-45.

Therefore, the Court should dismiss the Complaint with prejudice because there was no underlying constitutional violation and the officers' reliance on the search warrant was objectively reasonable.

**II.     Because there is no underlying constitutional violation, Plaintiffs have not pleaded a *Monell* claim.**

---

[6]     Plaintiffs also allege that the affidavit should have reached other conclusions based on the officer's training and experience.  Compl. ¶¶ 18, 33, 34.  But the fact that evidence is also likely to be found elsewhere, outside the home, has no bearing on whether evidence is also likely to be found inside the home.

[7]     Plaintiffs assign bad faith to Officer Volpe.  Compl. ¶ 45.  While the Court should presume this assertion to be true in evaluating the Defendants' Motion to Dismiss, Officer Volpe's subjective belief is irrelevant.  *See, e.g., Bond v. United States*, 529 U.S. 334, 339 n.2 (2000) ("The parties properly agree that the subjective intent of the law enforcement officer is irrelevant in determining whether that officer's actions violate the Fourth Amendment.").

Plaintiffs bring a *Monell* claim against the District in Counts Five and Eight of the Complaint. Compl. ¶¶ 102, 109.[8] A municipality's liability under § 1983 is limited. *See Monell v. Dep't of Soc. Servs. of City of N.Y.,* 436 U.S. 658, 694 (1978) ("[A] local government may not be sued under § 1983 for an injury inflicted by its employees or agents. Instead, it is when execution of a government's policy or custom . . . inflicts the injury that the government as an entity is responsible under § 1983."). A prima facie case of a *Monell* claim requires both (1) a "predicate constitutional violation" and (2) "that a custom or policy of the municipality caused the violation." *See Baker v. Dist. Of Columbia*, 326 F.3d 1302, 1305 (D.C. Cir. 2003) (citing *Collins v. City of Harker Heights, Tex.*, 503 U.S. 115, 120 (1992)); *accord Brown v. Dist. of Columbia*, 514 F.3d 1279, 1283 (D.C. Cir. 2008); *Konah v. Dist. of Columbia*, 971 F. Supp. 2d 74, 81 (D.D.C. 2013).

Because Plaintiffs' claims against the individual officers fail, Plaintiffs have failed to demonstrate the requisite "predicate constitutional violation" for *Monell* liability in this case. Thus, the Court should dismiss Counts Five and Eight with prejudice.

### III. Plaintiffs have not pleaded a case of negligence *per se*.

Plaintiffs fail to plead negligence *per se*. Plaintiffs fail to allege the statute that provides the basis for their claim in Count seven. Compl. ¶¶ 105-6. However, it appears Plaintiffs are relying on 21 U.S.C. § 879(a), which provides:

> A search warrant relating to offenses involving controlled substances may be served at any time of the day or night if the judge or United States magistrate judge issuing the warrant is satisfied that there is probable cause to believe that grounds exist for the warrant and for its service at such time.

---

[8] Count 4 states: "The obvious lack of probable cause and false and reckless statements and omissions were the result of a policy, pattern, and custom of such conduct by the MPD and the result of MPD's failure to properly train and supervise its officers." Compl. Count 4 Caption (formatting omitted). Defendants' treat this as a *Monell* claim against the District.

21 U.S.C. § 879(a). Even assuming Plaintiffs rely on this statute, they have failed plead a prima facie cause of negligence *per se*.

Section 879 permits searches at night and requires only probable cause. *United States v. Gooding*, 477 F.3d 428, 435 (D.C. Cir. 1973) *aff'd Gooding v. United States*, 416 U.S. 430 (1974). As discussed above, the allegations of the Complaint fail to negate probable cause. Therefore, Plaintiffs have failed to plead negligence *per se*.

### Conclusion

For the reasons stated above, the Court should dismiss the Complaint with prejudice.

Respectfully Submitted,

IRVIN B. NATHAN
Attorney General for the
District of Columbia

GEORGE C. VALENTINE
Deputy Attorney General
Civil Litigation Division

/s/ *Jonathan H. Pittman*
JONATHAN H. PITTMAN [430388]
Chief, Civil Litigation Division Section III

/s/ *Joseph A. González*
JOSEPH A. GONZÁLEZ
Assistant Attorney General
D.C. Bar No. 995057

/s/ *Aaron J. Finkhousen*
AARON J FINKHOUSEN [1010044]
441 4th Street, N.W., Sixth Floor South
Washington, D.C.  20001-2714
202-724-6511 (direct)
aaron.finkhousen@dc.gov

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

_____
S.H, *et al.*,                          )
                                        )
                                        )  Civil Action No.: 1:14-cv-01317 (KBJ)
      Plaintiff,                     )
                                        )
v.                                      )
                                        )
DISTRICT OF COLUMBIA, *et al.*          )
                                        )
                                        )
      Defendants.                    )
_____)

## **ORDER DISMISSING THE COMPLAINT**

Upon consideration of the Defendants' Motion to Dismiss, any response thereto, and the entire record, it is by the Court this _____ day of _____, 2014, **ORDERED** that the Defendant's Motion to Dismiss is **GRANTED**; and it is further **ORDERED** that the complaint is dismissed with prejudice.

                                                                     _____
                                                                     K<small>ETANJI</small> B<small>ROWN</small> J<small>ACKSON</small>
                                                                     D<small>ISTRICT</small> C<small>OURT</small> J<small>UDGE